Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. Judge Hawkins and I are honored to have our colleague Judge Kathy Brattle from the District of Kansas sitting with us today by designation, so we're grateful for her being here and helping us out. We have a number of cases that have been submitted on today's docket. I'll now officially enter those. They are Kumar v. Barr, United States v. Weatherspoon, United States v. Gil Garcia, and United States v. Garcia. Those matters are now officially submitted. For our first argued case, Lind v. United States will now proceed. So, counsel, please proceed. Good morning. Good morning. My name is David Abney. I'm here representing the plaintiff appellant, Shari Lind. I'd like to talk about the main thesis and then after that the waiver prejudice and standard of review issues, if time permits. Okay. And then I'd like to reserve about 30 minutes for rebuttal. Thirty minutes? Just kidding, Your Honor. Two minutes will do. Why? Somewhere in that range would be nice. So what are you hoping to reserve? Three minutes. Okay. I will try to help you, but do watch the clock. Thank you, Your Honor. And it goes down. As far as the main thesis that we have is that when you have a biomechanical expert, no matter how well qualified, unless that biomechanical expert is also a medical doctor, the biomechanical expert cannot give a specific causation opinion. That is, cannot say that this specific person suffered this specific accident or injury or did not suffer this specific injury in this specific event. Let's say you're correct. We're really talking about potential harmless error. And at least according to my notes, the government put on three orthopedic doctors that said the injury was degenerative and a fourth doctor that said the injury was most likely resulted from degenerative processes. Under that circumstance, wouldn't any error that was committed here be harmless? No, Your Honor. This is always a very hard thing to deal with. And you talk about prejudice, non-prejudice, harmlessness of error. All I can really say about it is that the government pushed very hard to get this expert and get this expert's opinions in because the government called them persuasive. Called them persuasive in the findings of fact and conclusions of law, opposed the motion to eliminate. And then at the end of the case, the district judge accepted that. In fact, added an extra persuasive somewhere in the findings of fact and conclusions of law saying that it was a persuasive opinion that these particular injuries, the left shoulder severe injury, could not have happened in this particular incident. That's different than the degenerative issue that I thought you were complaining about. No. What we're complaining about is this expert saying this person, this injury, this injury, and this event, it all comes together. And it's impossible that she suffered the kind of injuries that she's complaining about, the ones that have resulted in hundreds of thousands of dollars in medical bills and the surgery and all the other problems that she had. Didn't that testimony, though, fall within the expertise that Dr. Pelez had? He does have some expertise, right? Well, sure. There was medical testimony in support of the government. There was medical testimony opposing the government. And I believe that the fulcrum, the balance here was this specific causation biomechanical expert who specifically said impossible that she suffered this particular kind of injury and this particular event. Was he offered as a specific causation expert? He was, Your Honor. And that's what he testified about. He said, I'm here to testify as to the causational link between the Border Patrol vehicle and what happened to your client's vehicle. He testified in general biomechanics as well. Could you start with a yes or no to my question? I think I said yes. He was hired as a biomechanical expert. And, yes, he provided a specific opinion not only about the mechanics of the collision itself but also about the mechanics, specific mechanics of the injury to this particular person. Now, a biomechanical expert can testify in general that in general a person probably would not be expected to suffer injury in this kind of event. They can give general causation opinions until the cows come home. But what they can't do is provide a specific causation opinion. And that really was what mattered here. You can talk about generalities all you want, but when the district judge has to decide a specific case and say this specific person, this specific injury, this specific event, then you've got to have some sort of specific causation opinion, and it needs to come from a medical doctor alone. Part of the problem with Dr. Pell is you may have not had experience with him directly. He's just a wizard in the courtroom. I mean, I like him a lot. I love hearing him. He's persuasive. He's a great expert on anything you want to name. Talk about the price of corn in China. He's your expert. He's that good. Jurors love him. Well, let's just say all that's true. This is a bench trial, right? Yes, it would be a misjudgment. It is a mistrial. It was a bench trial. Oh, I'm sorry. Pardon me, Your Honor. Yes, it was a bench trial. So he's not there trying to persuade a group of laypeople who may not have — might have been swayed by his intoxicating demeanor and expertise. He was in front of a hard-nosed district judge. Yes, but even hard-nosed district judges are still people, and they are persuaded by experts who really — well, maybe some of them are still people, but they're still persuaded by a good, eloquent expert. He is dynamite. I'm not saying that there's a jury in this particular case, but there is a human being who is being affected by testimony on specific causation that should not have been accepted on legal principles as a matter of law. But you still get back — and there's another guy, Dr. S.K. Auerbach, who was an M.D., who was an expert who indicated that a degenerative process was what caused — what necessitated Lynn's shoulder surgery. Yes. Isn't that correct? Yes, Your Honor. So what's the problem? Let's assume, as my colleague points out, you know, you've got a district judge hearing this. He or she is not going to be overwhelmed by theatrics or how credible the person is. There's a regular M.D. who is qualified to make — offer the testimony about which you object. And he testified that the necessity of the operation was caused by a degenerative process, right? Right. Okay, so what's the problem? Well, the problem is you have an expert — you have our experts saying one thing. Their experts saying the other thing, degenerative cause, are saying that it's traumatic cause. And then you've got the man in the middle who can tip the balance, we submit, who is Dr. Pellis. And he is a very persuasive, strong expert who gives an absolutely unequivocal opinion it's impossible that she suffered this particular kind of left shoulder injury in this incident. No question about it, impossible. And who's to say that that's not the deciding factor? And I understand that when you get into the position of arguing prejudice or not prejudice, you are looking up a steep hill. But it's still a hill that we need to look up in this case and say, well, you know, if things are really that balanced, if things are in balance, then putting him into the equation was wrong. Isn't my colleague's question, though, about this being a bench trial really determinative here? No, Your Honor. I mean, you have an experienced district judge who heard the testimony and made a determination. The testimony about degenerative process was in. Your side's testimony was in. Somebody had to weigh this. And, you know, you're not going to be overswayed by anybody who's going to make a decision. And that's what happened. But assuming that there is some equipoise in this, assuming there's some general balance. We don't know. We don't know whether there was equipoise. We don't know. We didn't know there was a whole bunch of testimony, indeed a whole bunch of testimony about the degenerative process by, I guess, altogether five people. Right. And, you know, that's a lot of testimony. And the judge was undoubtedly swayed by that. Well, there's two things. One is the degenerative testimony is invaluable, actually, for our side because you have a vulnerable plaintiff. You have somebody that you would expect would have an event that would be more severe for her than for other people. But on the other hand, what you have is you have a balance here. You've got one side or the other side. If Dr. Pellis wasn't important, they wouldn't have pushed so hard to get his testimony in and keep his testimony in. They wouldn't have put into their proposed findings the fact that his testimony was persuasive. And the district judge wouldn't have said, I find persuasive what he said. Under these circumstances, at the minimum, we should do this over and take Dr. Pellis completely out of the equation. Suppose the district court, district judge in this case, had said, I'm going to disregard Dr. Pellis, but I've heard medical testimony from the plaintiff, I've heard medical testimony from the defense side. And on balance, I find the plaintiff's medical, the defense medical testimony more persuasive. Would we even be here? I'd be in Ahwatukee, Your Honor. I'd be in Phoenix, not enjoying this beautiful city and the beautiful weather because there probably wouldn't be much for me to do. But we don't have that situation. We have the joker in the deck. We have Dr. Pellis here with his biomechanical expertise stepping into a medical doctor role and saying it's impossible. If you take him out of the equation, things may be different. And that's what we're, all we're asking for is an even playing field without testimony in the case that should not have been in the case. I have no problem with the fact that we have a very well-qualified district judge. However, he made one mistake already, and that mistake was to allow Dr. Pellis' specific causation testimony in. So if we were to agree with you and send it back, you wouldn't want us to assign it to a different district judge? Your Honor, I would love to have our state court rule where we get a chance to a change of judge, and I don't know if I'm allowed to do that in district court. No. And since I'm not, whoever is, and I'm not a trial lawyer, so whoever handles this is going to have an interesting situation when you come down to a judge who has been overturned by the Ninth Circuit. But I am sure. That happens every day. Yes, Your Honor, it does. You want to save some time? I'd love to save some time, Your Honor. Do you have any questions? Can I just ask you a question? So what is it in a medical doctor's training that would allow him or her to discuss biomechanics? Well, nothing to really allow to discuss biomechanics, but the medical doctor has years of training and diagnosis of particular people, look at the entire medical history, examine them physically, which Dr. Pellis didn't do, talk with the patient, which Dr. Pellis didn't do, get an understanding of what this particular person is capable of suffering and not suffering in an event of this kind. It's hands-on specific knowledge gained through not only years in medical school residency and all the other training, but also experience on the job. They can take a specific person and say, well, looking at this event and what you've told me, what I've seen, the examination, the x-rays, everything else, I think or don't think that you suffered an injury. It's a different ballgame, Your Honor. Okay. But, I mean, basically you're saying that the field of biomechanics has nothing to teach us about the cause of this woman's injuries. It has general principles to teach us. But in terms of her specific injuries, it has nothing to inform the decision. Not her specific injuries for this specific incident. No, Your Honor. Okay. Thank you. Thank you. So we'll hear from you about a little bit. Let's hear from the government. Good morning. Good morning. May it please the Court. My name is Kate Foss, and I represent the United States. As reflected in the questions that you've asked of plaintiff's counsel, this was a bench trial. It was more than a week-long bench trial where the district court heard a whole variety of evidence that could lead to this conclusion. Despite plaintiff's argument that they had presented this argument on specific causation, the first time that specific causation as a term comes up is in their motion for new trial, not in the original motion in limine, not as an objection at the time of trial, not as an objection to any question asked of Dr. Pellis at the trial, not in their proposed findings of fact and conclusions of law, not in their response to our trial brief, not in their trial brief, at no point in time was this specific causation distinction made. They did move in limine to exclude that testimony, didn't they? They did. But in that motion — Under our case law, isn't that enough? I submit that it's not, Your Honor. First, because they didn't make the specific objection that they're now trying to make. In the motion in limine, plaintiff wanted to exclude Dr. Pellis altogether as unreliable, and that was principally supported by a 12-page affidavit by Mark Cannon, who hadn't previously been disclosed in this case. That — there was an additional 78 pages of exhibits to that. In fact, at the end of the motion in limine, plaintiff specifically said, you know, some might say that they can opine on forces. No, they can't. They can't opine on forces. It wouldn't be helpful to the district court here. This is all phrased in terms of the likelihood of something happening, which is no more than a lottery ticket being picked in terms of it happening. After that, the district court in ruling didn't address specific causation because it wasn't raised as an argument, but simply said, this is supported by this undisclosed expert under the court's time schedule. That's enough. It's denied. So the case law, like Marbled, Murillette, and Fenton, they go to the fact that in order to preserve an objection, you need to give the district court an opportunity to rule on it. And if the district court hasn't so ruled, to make the district court aware. It has to be definitive and explicit. And here, the only thing that it was definitive and explicit about was that it was based on an untimely rebuttal expert. Here, both our Office of the United States and the district court didn't have an opportunity to correct these errors. The vast majority of Dr. Pellis's testimony would still fall into this argument that they're making in terms of general causation. Now, we submit that he should be able to testify as to specific causation as well. But even if the court had said, no, just limit it to general causation, it would have been very easy to couch all of our questions and make it in terms of just general causation to say, in general, is this the type of injury you would expect from these forces? And he can say yes or no. What's the government's position as far as the point, at least, that I raised a little while ago where you've got at least five people, I think, in addition to Dr. Pellis, who testified regarding the degenerative process that was underway with Ms. Lind and suggested that was the specific causation? Even if there was error on the part of the district judge, I'm not saying there wasn't, but assuming for a moment there was, does that render whatever he might have said harmless? I agree. I would agree, Your Honor, that that does render it harmless and that there's no prejudice. There was an overwhelming amount of medical evidence in this case to the fact that Ms. Lind's injuries were degenerative, not to mention that at the time of her injuries, she did not complain specifically of left shoulder pain. She was diagnosed with whiplash. She saw a chiropractor who treated only her back. That's not unusual, is it? But she was treated only with her back, not at all with her shoulder, for months. The government could have tried this case and avoid the problem that your colleague is rendering an opinion as to the speed of the Border Patrol vehicle, the impact on the intervening vehicle, the impact on the plaintiff's vehicle, and establish those as part of the record, and then stopped, put on a medical expert, asked the medical expert to assume what the biometrics expert had just testified to. And given that, Mr. Medical Expert, do you have an opinion with a reasonable degree of medical certainty whether these complained-of injuries could have been caused by this accident? That would have been perfectly appropriate, wouldn't it? I agree, Your Honor, but the plaintiff did not present an argument that they should not be allowed to make those specific causation opinions. So as a result, there was no reason why the government ---- You would have had to have guessed as to their objection. Exactly. And further, the Federal Judicial Council published a reference guide on engineering kind of distinguishing between biomechanical expertise and that of a medical doctor. And the role of a physician is that of treatment and diagnosis, but it's not a detailed assessment of the physical forces and motions that created injuries during a specific event. And so that reference guide concludes that a biomechanical expert may opine as to whether plaintiffs' alleged damages were caused by the conduct in question. Going specifically to ---- Oh, so I just want to be sure I understand. You're saying that the reference guide to which you referred says that it's okay for, in this case, Dr. Pellis, to testify about specific causation. Is that correct? Yes, Your Honor. From your perspective, there's no potential error at all, whether or not it's harmless. That's correct. And this, coming down to it, the argument is about what a medical doctor can or cannot do, but here Dr. Pellis was not trying to diagnose any injuries. He was looking at the diagnosis based on the medical doctors and seeing whether there was an injury mechanism for what happened. There are two specific opinions that Dr. Pellis gives, and the first is whether a labral tear, what the traumatic injury mechanisms are. And he says there are two known traumatic injury mechanisms for a slap tear. The first is a pitcher, by contracting the bicep, can come up and force the labrum out. And the other is falling onto an outstretched hand, which incidentally was something that happened to Ms. Lind more than a year after her accident, but before she was ever diagnosed with a labral injury. And in so doing, Dr. Pellis says these are the two known traumatic injury mechanisms for a labral tear. I can't see how these happened here. And the district court, in its conclusions of law, said these are the two. Were she cross-examined on that point? In the cross-examination, plaintiff primarily focused on the medical records. Here's what I'm asking. In cross-examination, did trial counsel for the plaintiff ask Dr. Pellis if his opinion excluded any other potential cause for the tear? The trial counsel did. Is that a yes or no? Or I don't remember? He did not specifically state whether there was any other mechanism. I'm asking whether he was cross-examined on this point that you're now emphasizing, and that is that the labrum tear could only have been caused by pitching or falling down with your arm stretched. Have I accurately summarized it? No, Your Honor. Okay. Summarize it for me. He was not, as to your question, I'm saying that, no, he was not cross-examined specifically as to that point. He was cross-examined, and the start of his testimony was the fact, he says, I'm looking at your report, and you used the term likely or unlikely any number of times. So you're not definitively ruling out a specific cause. You're just saying it's likely or unlikely. And Dr. Pellis said, yes, that's the terms I use. And that goes to the fact that this ultimately is more of a general causation opinion any way you look at it. He's saying these are the known mechanisms. I'm not aware of how it could happen in this case. The other opinion that plaintiffs spend a lot of time talking about is the fact that Dr. Pellis and the court accepted that it would be difficult to injure your shoulder in three different places at the same time in the same accident. So her injuries are to the top of the shoulder, the slap chair, one in the front, one in the back, and the supraspinatus tendon. And Dr. Pellis said, I'm unaware of how in this, you know, straightforward motion of a rear-end accident at a very low speed, how you could simultaneously injure the top, front, and back of your shoulder. And this is something that is also just a matter of common sense. It's very difficult to injure one body part all at the same time or, as written in our briefs, to say that a child simultaneously skinned his knee and bruised his The way you describe that, it sounds like that would have been within Dr. Pellis's expertise in any event. I agree, Your Honor. And with that, that's why biomechanical testimony is important. That's not the focus of a medical doctor to look at how these forces are affected and what parts of the body are impacted by what forces. So to say that they can provide no testimony as to what did or did not happen is not helpful to the factfinder to just simply abstract it out. But if that had been the case, if the district court had been presented with this argument and the district court had made a ruling one way or the other, the United States would have had an opportunity to frame its questions in that way. But they didn't here, and that's why it comes down to a waiver argument. And there's certainly no plain error, but even an abuse of discretion, if you find it to be problematic for a biomechanics expert to opine on medical testimony when there's no Ninth Circuit precedent on this issue. It's just a matter of district court cases and state court cases that have differing opinions on this issue about whether it's proper for a medical doctor to give specific causation testimony. Here, and it really comes down to the questions asked previously in terms of the prejudice to plaintiff. And here there is none. Despite this argument that it somehow tipped the balance, there's overwhelming number of factual findings, including the vast majority of Dr. Pellis' testimony, which would allow the district court to find how it did and rely upon the medical doctors, rely upon its own credibility determinations, finding that the plaintiff was not credible. Her own doctor, who was opining on causation, explicitly said that he could not say for certain whether it was caused by the accident, but simply that it was normally a traumatic event and he didn't have any other explanation for it. Post hoc ergo proctor hoc type argument. So we have all of these doctors. We have all of the medical records. That alone is enough to support the district court's judgment here. I have nothing further unless you all have more questions? I think not. Thank you so much. Thank you. Thank you. Counsel, you've got some rebuttal time here. Yes. But not 30 minutes. No, sir. If multiplied by 10, we'd be just about there. Okay. I owe a very heavy duty to my client to do the best I can for her, but also a duty to the law. As my colleague said, there's no Ninth Circuit precedent on this particular kind of problem. And the Court, however it handles its resolution of this case, might consider whether some discussion of the Ninth Circuit's position on this point would be a good idea to provide guidance not only from Arizona, but throughout the Circuit. I believe that the majority rule would be the correct one, and it's the one I advocate  for. David, you didn't try the case. Pardon me for using your first name. We've known each other for some time. Thank you, Your Honor. You're the appellate lawyer. You didn't try the case. No, Your Honor. Plaintiff's counsel didn't object to this testimony at trial. That is correct, Your Honor. Did not specifically cross-examine the biometrics expert on the point of causation. Not exactly right. There was cross-examination concerning causation. It sort of circled around it, but not right on the point. Right. That is correct, Your Honor. There was a motion in Lemonet. Correct. It was contrary. Proposed facts were not submitted to the district court. Correct, Your Honor. Well, there were proposed findings by conclusion of the law. They didn't deal with the Pele situation, since that had already been dealt with, with the motion in Lemonet. Sounds like you're sort of down three strokes with one hole to play. Yes, Your Honor. But as Tiger Wood has just shown us, you can still become a champion after a long time. Or as the Marines say, I'm not retreating, I'm just advancing in a different direction. So you're standing on the bridge on the 12th hole looking at the court and daring us, right? Yes, Your Honor. With great pleasure. It's, of course, a beautiful day, as it always is. I do want to say a little bit about the motion in Lemonet. My colleague seems to be suggesting that you have to follow the Chicago method, which you may be familiar with, vote early and vote often. And I think the motion in Lemonet is simply one vote. You just simply take care of the motion in Lemonet, and you don't have to keep coming back to the same issue over and over, because an objection at trial would really just be a form of motion for reconsideration. What's the point of that? Unless you've got something new to argue to the court, it really is a waste of everybody's time. As far as causation, we were talking earlier about general causation, specific causation. There's a huge difference. It's the difference, for instance, Kansas. Manhattan, Kansas, is a city, and Manhattan, New York, is a city. They're not really much alike when you get right down to it. There's a huge difference between general causation and specific causation. And it's the difference between right and wrong, day and night, the lightning bug and the lightning, as Mark Twain used to say. One opinion is allowable. Biomechanics experts can testify about general causation. And here he did testify a lot about general causation. But when you cross the line to specific causation, you've crossed the line you're not allowed to cross. If there's no questions. Thank you very much for a very pleasant experience. Thank you. Thank you, counsel. Thanks to both. Thank you both, counsel. Indeed. Thank you both for your argument. We appreciate it. The case just argued is submitted.
judges: Hawkins, M. Smith Jr., Vratil